UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No.: 4:15-cr-403-2 HEA (SPM) |
| CHARLES FLOWERS, | ) ) ) |
| Defendant. | ) ) |

**SENTENCING MEMORANDUM**

COMES NOW Defendant, Charles Flowers ("Flowers"), by and through counsel, and files the following memorandum for sentencing.

**I. Background**

On August 26, 2015, the government filed a one-count indictment alleging Flowers and others conspired to possess with intent to distribute heroin. See Indictment [Doc. Text #1]. On April 14, 2016, Flowers pled guilty to the indictment, see Presentence Investigation Report at ¶ 1 [hereinafter "PSR"], and did so pursuant to a written agreement. See id. at ¶ 2. In the agreement, the parties estimated a total offense level of 19. See id. at ¶ 6. The PSR confirms this estimate, see id. at ¶ 36, and calculates an advisory guideline range of 30 to 37 months. See id. at ¶ 69. For the reasons below, however, a non-custodial sentence, to which the government does not object, will better serve the purposes of sentencing, the mandate of 18 U.S.C. § 3553(a), and the individualized form of sentencing envisioned by Booker than will any other sentence available to this Court.

1

## II.  Flowers's History and Characteristics.

Flowers is one of six still living[1] children born to a blue collar family and has lived his whole life in the St. Louis area.  See id. at ¶ 44.  His father, now 70, recently moved to Mississippi after a lifetime of factory work and a decade in the United States Army Reserves.  See id.  His mother, who passed 11 years ago, worked as a doctor's office receptionist and bus driver for the St. Louis School District.  See id.  Neither parent ever suffered a prior conviction, and nor have any of his siblings, all of whom work and have families that contribute to the St. Louis community and beyond.  See Letters in Support of Defendant for Sentencing.

Flowers didn't graduate from high school.  See PSR at ¶ 54.  But from age 23 to 24 he attended Ranken Technical College, where he studied home construction and foundation repair.  See id. at ¶ 55.  Since 2000, he's owned and operated a small business under two different names:  Flowers' Waterproofing and Leaky Basement Foundation Repair.  See id. at ¶ 60; see also Letters in Support of Defendant for Sentencing.  The business employs five full-time workers at present, see id., and, from the start, Flowers has provided work opportunities to anyone he could when possible.  See id.

In 2002, Flowers married Dionne Reynolds ("Dionne").  See id. at ¶ 46.  Dionne works full-time for Air Products and Chemicals, Inc., a company based in Allentown, Pennsylvania that manufactures industrial gases and chemicals.  See id.  The couple has two children in common, a 17 year-old daughter and a four year-old son.  See id.  They adopted their daughter in 2003, and she's set to start her senior year of high school this week.  See id. Their four year-old son will

---

[1] Flowers' brother Nathaniel passed from lung cancer in 2011.

start kindergarten next year. Flowers also has a 19 year-old son from a prior relationship and has had full custody of him since the age of seven. See id. at ¶ 46. Like his father, he's scheduled to attend Ranken Tech this year. See id. The family lives together and is close, as they are with Flowers' siblings and their families. As the letters to this Court reveal, the family as a whole regularly organizes and participates in charitable events to assist those in need, whether in St. Louis or elsewhere. See Letters in Support fo Defendant for Sentencing.

Flowers has no criminal history whatsoever and, save the instant offense, has lived an entirely pro-social life.

### III. The Nature and Circumstances of the Offense[2]

In late 2013, Flowers brokered three heroin transactions between Rodney Keith Jones ("Jones") and Michael Richard ("Richard"). See id. at ¶¶ 11-17. The transactions involved nine to 11 ounces all told and, on each occasion, Richard fronted the heroin to Flowers on Jones' behalf. See id. at ¶¶ 11-18. Jones either paid Flowers on delivery or at some later time, after he sold enough to pay Richard back. See id.

Flowers didn't profit from this service. See id. at ¶ 18. He collected from Jones the price Richard set and delivered it to Richard when received. See id. In fact, this arrangement cost Flowers $1,200 after he paid Richard for a debt Jones either couldn't or wouldn't make good on. See id.

Not too surprisingly, Flowers had never brokered a drug deal before. Nor had he ever sold drugs, and he wouldn't have involved himself here had he not known Jones since childhood

---

[2] The facts cited herein were pulled from the PSR, the government's discovery, and Flowers' safety-valve proffer.

3

and the two come back into contact after Flowers bought a rental property next door to Jones' home sometime in 2012.

Around September 2013, Jones' sources of supply for heroin ran dry,[3] a fact Flowers overheard Jones discuss.  Ordinarily, Flowers couldn't help him with the problem, but, on this occasion, he new someone who could, Richard, the owner of several properties in the St. Louis area who had used Flowers' company to waterproof homes since about 2007 and from whom Flowers had bought personal use amounts of marijuana in the past.

About two months earlier, Richard told Flowers about a failed real estate deal that left him with an insolvent debtor with a $25,000 debt due.  According to Richard, the debtor made good on the debt in heroin which Richard was looking to sell.  Richard asked Flowers if he had an interest or might know someone who did.  Flowers said he didn't, which was true at the time and until circumstances changed several weeks later when he learned about Jones' predicament and subsequently brokered the three transactions[4].  Thus, did Flowers' exceedingly poor judgment put him in the midst of a conspiracy to distribute heroin, not for profit, but to misguidedly help a childhood friend.

### IV.  Conlcusion

Among others, these unusual facts and circumstances explain why Flowers merits a non-custodial sentence and why the government does not object to this outcome in this case.

---

[3] According to the government's discovery, Jones had three or so sources on whom he regularly relied to supply heroin.

[4] Jones asked Flowers to broker a fourth transaction, but Flowers declined to do so.  He ended his involvement with Jones and Richard shortly after and was indicted about 17 months later.

4

Accordingly, Flowers respectfully requests this Honorable Court impose a sentence of probation, with or without a term of home confinement, as this sentence will better serve the purposes of sentencing, the mandate of 18 U.S.C. § 3553(a), and the individualized form of sentencing envisioned by Booker than will any other sentence available to this Court.

Respectfully submitted,

ROSENBLUM, SCHWARTZ, ROGERS & GLASS, PC

By: /S/ Adam D. Fein
ADAM D FEIN, #52255 MO
Attorney for Defendant
120 S. Central Avenue, Suite 130
Clayton, Missouri 63105
(314) 862-4332/Facsimile (314)862-8050

**CERTIFICATE OF SERVICE**

I hereby certify that on August 16, 2016, the foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Ms. Sirena Wissler, assistant United States attorney.